HENDRY, Judge.
Plaintiff-appellee was injured in an accident when a Volkswagen automobile owned *33 and operated by her was hit by the defendant-appellant’s train.
The tragic accident in which the parties were involved occurred in Miami at the intersection of Douglas Road and the defendant’s railroad track, after dark, at about 6:30 P.M., on December 13, 1960. The weather at the time was fair but so cold that the plaintiff was riding with her car windows, except the small vent window, closed and with her heater in operation. At this crossing Douglas Road runs north and south and the railroad track runs in a southwesterly and a northeasterly direction. The defendant’s train, consisting of a diesel engine and 31 cars loaded principally with rock, was headed in a northeasterly direction when it collided with the plaintiff’s Volkswagen being driven by her in a southerly direction across the track. The crossing is in a rather congested area and heavily used by motor vehicles. There are some business buildings and some billboards in the vicinity of the crossing, some of which tend to obstruct the view of the track to the northeast and southwest, until the motorist approaching from the north gets within approximately 100 feet of the track. There is an ice plant located in the south east quadrant of the intersection near the track, and there is a building occupied by a candle manufacturer situated about 200 feet to the north of the track and east of Douglas Road. On the west of Douglas Road along the north side of the track is another business building and a large billboard, both of which limit a motorist’s view of the track to the right while traveling south across the intersection. These obstructions were known to the plaintiff and the operators of the defendant’s train. All except the fireman had traveled this route on other occasions. The crossing was designated on its north side by a white crossbuck with the words lettered in black “RAILROAD CROSSING — LOOK OUT FOR THE CARS”, by a circular reflectorized sign with a criss-cross and the letters “RR”, and by a rectangular sign reading “DO NOT STOP ON RR TRACK”.
Plaintiff sued the defendant in the Circuit Court for Dade County, Florida. Her complaint alleged, inter alia, that the defendant did so negligently manage, maintain, operate or control its train' and equipment, in its course of travel, as to cause same to collide with the motor vehicle of the plaintiff, as to proximately cause serious and permanent injuries to the plaintiff.
The defendant denied that it was negligent and alleged that the plaintiff’s negligence was the sole proximate cause or the contributing cause of her alleged injuries.
Upon trial the jury awarded the plaintiff $25,000 for her injuries. A final judgment for such sum was entered upon the jury’s verdict. Defendant’s motions for new trial, entry of a remittitur, judgment in accordance with defendant’s motion for directed verdict and for judgment notwithstanding the verdict, were denied.
The defendant in this appeal contends that it was entitled to a directed verdict on the ground that there was no evidence of its negligence. Defendant further contends that it was entitled to a new trial on the ground that the jury verdict was contrary to the manifest weight of the evidence.
The record shows that the witnesses were not in accord in their testimony as to what the operators of the defendant’s train did to warn the public of the train’s approach to this crossing at Douglas Road.
The engineer, conductor and fireman, all of whom were in the engine and engaged in the operation of the train when it collided with the plaintiff’s car, testified, in effect, that the train was traveling between 15 and 20 miles per hour; that two of the engine’s head-lights were on bright and a Mars light was on and oscillating; that the engineer had given four loud blasts of the whistle and the bell was ringing.
There was testimony by the plaintiff that she was traveling south at approximately 30 miles per hour when she approached the *34 crossing, but had slowed down and shifted to second gear when she attempted to cross the track; that she had first looked to her right and then to her left and back to her right but neither saw nor heard the train until an instant before the engine struck the left rear of her car. Just as she was hit, she saw a big light and swerved to her left.
The plaintiff called two disinterested witnesses who were at their places of business located at or near the intersection. Mr. Hubert, an employee of Royal Palm Ice Plant, testified that he was within a few feet of the crossing using the telephone on the loading platform of the ice plant when he noticed the train coming in his direction with its headlight burning. He was talking on the telephone when he heard the crash between the automobile and the locomotive. He said that he did not hear any whistle or bell signal from the train. He testified further that he had heard the whistle signals on previous occasions and found them to be quite a disturbance to him when he would be talking on the telephone.
The plaintiff’s witness, Mr. Wancio, was at his candle manufacturing plant, which was located approximately 200 feet north of the railroad track, when the accident occurred. He was in his building talking on the telephone when he heard a piercing scream outside. He testified that all the doors, except one, to his building were closed at the time. His testimony was in conflict as to whether it was easy or difficult to hear the train’s whistle and bell. At one place in his testimony he said it was easy and at another place he said it was sometimes hard to hear. However, he stated that he heard no whistle at or near the time of the crash in question.
One of the defendant’s disinterested witnesses, who was selling Christmas trees near the crossing, testified that he heard the train’s horn or whistle blowing just prior to the collision, but did not hear a collision or scream. He said the whistle or horn was blowing real hard blasts, three in succession then three more. He did not hear a bell signal.
Mrs. Baker, another disinterested witness called by the defendant, said she heard a whistle blowing while she was talking to a customer in her place of business which was on the north side of the track near the crossing. She had no recollection of hearing more than one blast.
The principal point for our consideration is whether the trial judge was in error in denying defendant’s motion for a directed verdict.
Our analysis of the testimony and the applicable law convinces us that a jury question existed as to whether the railroad was guilty of negligence in failing to give adequate warning signals of the approach of the train to the crossing. The testimony of Mr. Hubert revealed that he was watching the approaching train while he was talking on the telephone; that he did not hear any whistle signal being given; that had one been given it would have disturbed his telephone conversation as it had on previous occasions. In accordance with the decision of our Supreme Court in Tyus v. Apalachicola Northern Railroad Co., Fla. 1961, 130 So.2d 580, this testimony alone would have been sufficient to present a jury question as to whether adequate warning was given. Certainly a jury question was presented when the testimony of the plaintiff and Mr. Wancio is added to that of Mr. Hubert. Thus, we'find that the defendant’s motion for directed verdict was properly denied.
We further find no merit to the defendant’s contention that the verdict was against the manifest weight of the evidence or was so excessive as to require a remitti-tur.
Upon full consideration of all the contentions of both parties we have concluded that the jury’s verdict should not be disturbed.
Affirmed.